| | |
|---|---|
| RANDLE COOKE, and | ) |
| KENDRICK DOUGLAS, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES BUREAU | ) |
| OF PRISONS, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Randle Cooke and Kendrick Douglas (collectively "plaintiffs") are detainees in the custody of the Bureau of Prisons pursuant to 18 U.S.C. § 4248. Each has been designated a "sexually dangerous person" under 18 U.S.C. § 4248 and is committed at the Butner Federal Correctional Complex in Butner, North Carolina. Plaintiffs have health conditions that require them to use wheelchairs for mobility and filed this action pursuant to the Architectural Barriers Act of 1968, 42 U.S.C. §§ 4151–4156, the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq., the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb et seq., and the First and Fifth Amendments of the United States Constitution [D.E. 1].

Plaintiffs, who are represented by counsel, allege that defendants' "failure to accommodate Plaintiffs' recognized disabilities has deprived—and continues to deprive—[them] of the ability to, inter alia, navigate their living quarters and other areas of the institution, receive adequate and confidential medical treatment, participate in recreational activities, and equally and effectively take part in other services and activities of the institution, including dining and religious programs." Compl. ¶ 1. Plaintiffs seek declaratory relief, injunctive relief, and attorneys' fees.

On April 23, 2012, defendants filed a motion to dismiss or for summary judgment [D.E. 25]. On June 8, 2012, plaintiffs responded in opposition to the motion [D.E. 29] and filed a motion for discovery and to deny defendants' motion to dismiss or for summary judgment [D.E. 30]. See Fed. R. Civ. P. 56(d). Defendants filed a reply in support of their motion to dismiss or for summary judgment [D.E. 31], and a response in opposition to plaintiffs' motion for discovery [D.E. 32]. Plaintiffs filed a reply [D.E. 34]. As explained below, defendants' motion to dismiss is granted in part and denied in part, and defendants' motion for summary judgment is denied without prejudice.

I.

Plaintiffs Randle Cooke ("Cooke") and Kendrick Douglas ("Douglas") are detainees in the custody of the Attorney General as "sexually dangerous persons" pursuant to 18 U.S.C. § 4248 at the Butner Federal Correctional Complex in Butner, North Carolina ("Butner"). Compl. ¶ 12.[1] Plaintiffs have health conditions that require them to use wheelchairs for mobility. Id. ¶¶ 1, 4–5. Plaintiffs assert that their living quarters at Butner—including their cells, bathrooms, indoor and outdoor recreation areas, medical examination rooms, cafeteria, and telephone—are not designed to accommodate plaintiffs' disabilities, and that the Bureau of Prisons' failure to implement accommodations discriminates against plaintiffs on the basis of their disabilities and violates several federal laws and the Constitution. Id. ¶¶ 22–84. Plaintiffs further assert that the conditions at Butner have adversely affected their ability to engage in religious activities, in violation of the Religious

_____

[1] On May 1, 2012, this court committed Douglas (with his consent) to the custody of the Attorney General pursuant to 18 U.S.C. § 4248(d). See United States v. Douglas, No. 5:10-HC-2158-D, [D.E. 45] (E.D.N.C. May 1, 2012) (unpublished). On May 22–23, 2012, Magistrate Judge Gates held an evidentiary hearing to determine whether Cooke should be committed to the custody of the Attorney General. See United States v. Cooke, No. 5:09-HC-2034-FL-JG, [D.E. 113–114] (E.D.N.C.). On December 10, 2012, Magistrate Judge Gates recommended that Cooke be found to be a sexually dangerous person and that he be committed pursuant to 18 U.S.C. § 4248. See United States v. Cooke, No. 5:09-HC-2034-FL, [D.E. 125] (E.D.N.C. Dec. 10, 2012). Cooke filed objections to the recommendation, and briefing is not yet complete.

2

Freedom Restoration Act and the First Amendment. Id. ¶¶ 85–96. Plaintiffs seek declaratory relief, injunctive relief, and attorneys' fees. Id. ¶¶ A–F (prayer for relief).

## II.

Plaintiffs contend that defendants' motion for summary judgment is premature due to the absence of any discovery. Generally, "summary judgment is appropriate only after adequate time for discovery." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (quotation omitted). Rule 56(d) provides:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). Thus, Rule 56(d) permits a court to delay ruling on a motion for summary judgment if the nonmoving party requires discovery to identify "facts essential to justify the party's opposition." Crawford-El v. Britton, 523 U.S. 574, 599 n.20 (1998) (quotation omitted); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986); Nader v. Blair, 549 F.3d 953, 961–62 (4th Cir. 2008).

A party requesting relief pursuant to Rule 56(d) must demonstrate that the party has not had sufficient time to develop information needed to oppose the summary judgment motion. See, e.g., Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002). In making its determination, a court may consider the diligence that the non-moving party has demonstrated in pursuing discovery. See White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 n.2 (4th Cir. 2004); Harrods Ltd., 302 F.3d at 245; Strag v. Bd. of Trs., 55 F.3d 943, 953–54 (4th Cir. 1995). A court also may consider whether the case "involves complex factual questions about intent and motive." Harrods, 302 F.3d at 247.

3

Plaintiffs' attorney has filed a declaration asserting the need for discovery and stating that no discovery has taken place in this case. See Pls.' Rule 56(d) Mot., Soares Decl.[2] The Fourth Circuit places "great weight on the Rule [56(d)] affidavit." Evans, 80 F.3d at 961. Plaintiffs' counsel's Rule 56(d) affidavit notes that defendants' summary judgment motion "rel[ies] in part on declarations submitted by witnesses who have not been deposed or otherwise subjected to cross-examination concerning their allegations" and "photographs and documents that have not been produced in full to Plaintiffs" who "have had no opportunity to properly evaluate the credibility or completeness of this evidence nor to inspect the premises (with or without Plaintiffs' experts) in order to properly challenge and rebut Defendants' proffered evidence." Soares Decl. ¶¶ 2, 4. Plaintiffs also assert that "[w]hile each Plaintiff is able to testify as to the accessibility conditions and discriminatory conduct as alleged in the Complaint, the bulk of the evidence relating to the prison conditions and Defendants' failure to comply with applicable accessibility laws and the Constitution, is within Defendants' exclusive custody and control and will need to be adduced during discovery." Id. ¶ 5.

Defendants respond that discovery is unnecessary because the court should dismiss the case for failure to exhaust administrative remedies or pursuant to Federal Rule of Civil Procedure 12(b)(6). See Defs.' Opp'n Pls.' Rule 56(d) Mot. 2–3. Defendants further contend that "the declaration in support of Plaintiffs' motion does not specifically identify information sought by discovery, the reasons the information has not yet been obtained, and the materiality of the information to its opposition to the summary judgment motion." Id. 5–6 (internal quotation and citation omitted).

---

[2] Although the better practice is for a party (rather than an attorney) to file a Rule 56(d) affidavit, the court may accept an attorney's Rule 56(d) affidavit. See, e.g., Resolution Trust Corp. v. N. Bridge Assocs., Inc., 22 F.3d 1198, 1204 (1st Cir. 1994).

4

A.

As for defendants' argument that plaintiffs failed to exhaust administrative remedies, defendants initially focus on the Prison Litigation Reform Act of 1995 ("PLRA"), which states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §] 1983 . . . or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 84–85 (2006). The PLRA's exhaustion requirement applies to all prisoner "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The PLRA defines "prisoner" to mean "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The PLRA requires a "prisoner" to exhaust administrative remedies regardless of the relief offered through administrative procedures. See Booth v. Churner, 532 U.S. 731, 741 (2001). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007).

Plaintiffs concede that they did not exhaust any administrative remedies as to any claims. Nonetheless, they contend that as detainees under 18 U.S.C. § 4248, they are not "prisoners" under the PLRA and have no duty to exhaust administrative remedies under the PLRA. In support, they correctly note that proceedings under 18 U.S.C. § 4248 are civil, not criminal, actions. See United States v. Comstock, 130 S. Ct. 1949, 1954 (2010); United States v. Caporale, 701 F.3d 128, 130 (4th Cir. 2012); United States v. Wooden, 693 F.3d 440, 442–43 (4th Cir. 2012); United States v. Francis, 686 F.3d 265, 268 (4th Cir. 2012); United States v. Timms, 664 F.3d 436, 456 (4th Cir. 2012); United States v. Broncheau, 645 F.3d 676, 683 (4th Cir. 2011). Thus, they argue that their claims

5

are not subject to the PLRA's mandatory exhaustion requirement. See Hicks v. James, 255 F. App'x 744, 748 (4th Cir. 2007) (per curiam) (unpublished) (collecting cases); Michau v. Charleston Cnty., S.C., 434 F.3d 725, 727–28 (4th Cir. 2006) (holding that a person detained under South Carolina's Sexually Violent Predator Act does not meet the PLRA's definition of "prisoner" and therefore, the PLRA's requirements do not apply to his claims).

The court agrees that plaintiffs' claims are not subject to the PLRA's exhaustion requirement because plaintiffs were not "prisoners" as defined in the PLRA on the date that they filed suit. See, e.g., Hicks, 255 F. App'x at 748; Michau, 434 F.3d at 727–28; accord Talamantes v. Leyva, 575 F.3d 1021, 1024 (9th Cir. 2009) (collecting cases). Accordingly, the PLRA did not require them to exhaust administrative remedies before filing suit.

B.

As for defendants' argument under Rule 12(b)(6), the court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In conducting its review, a court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); see also Iqbal, 556 U.S. at 678–79. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor

6

Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

1.

The court first addresses plaintiffs' claim under the Architectural Barriers Act, 42 U.S.C. §§ 4151–4156 ("ABA"). See Compl. ¶¶ 55–59. Congress enacted the ABA "to insure whenever possible that physically handicapped persons will have ready access to, and use of, [federal] buildings." 42 U.S.C. § 4152. Defendants assert that plaintiffs cannot bring a private cause of action under the ABA and must instead seek "'enforcement through administrative processes of the Architectural and Transportation Barriers Compliance Board [("Board")] with final decisions of that body subject to judicial review.'" Defs.' Mem. Supp. Mot. Dismiss 8 (citing Gray v. United States, No. 2:10-cv-467-DBH, 2011 WL 5191294, at *6 (D. Me. Oct. 31, 2011) (unpublished), recommendation adopted, 2011 WL 5826600 (D. Me. Nov. 18, 2011) (unpublished)). In opposition to this conclusion, plaintiffs cite Rose v. United States Postal Service, 774 F.2d 1355, 1356–57, 1361–62 (9th Cir. 1984), for the proposition that they may file a private cause of action under the ABA without first exhausting the ABA's administrative process. See Pls.' Mem. Opp'n Mot. Dismiss 10.

Pursuant to 29 U.S.C. § 792(e)(1), the Board "shall conduct investigations, hold public hearings, and issue such orders as it deems necessary to ensure compliance with the" ABA, and "any complainant or participant in a proceeding [before the Board] may obtain [judicial] review of a final order issued in such proceeding." 29 U.S.C. § 792(e)(1). Moreover, the Board's "executive director is authorized . . . to bring a civil action in any appropriate United States district court to enforce, in whole or in part, any final order of the" Board. Id. § 792(e)(2). Thus, under the statutory scheme plaintiffs first must exhaust the administrative process under the ABA, and then seek judicial review.

7

Plaintiffs argue that because they "are seeking only injunctive relief . . . as opposed to . . . monetary damages," they need not present a claim first to the Board. Pls.' Mem. Opp'n Mot. Dismiss 9–10. Plaintiffs, however, cite no precedent to support the notion that a party seeking only injunctive relief is exempt from exhausting administrative remedies under the ABA, and the court concludes that only seeking injunctive relief does not obviate a plaintiff's obligation to comply with the ABA's statutory scheme. See 42 U.S.C. §§ 4151–4156; 29 U.S.C. § 792(e); accord Former Special Project Emps. Ass'n, 909 F.2d 90, 93 (4th Cir. 1990) (dismissing action seeking declaratory and injunctive relief under the Model Cities Act upon concluding that the Act did not create an implied private right of action); Smith v. Reagan, 844 F.2d 195, 201–02 (4th Cir. 1988) (dismissing action seeking declaratory and injunctive relief under the Hostage Act upon concluding that the Act did not create an implied private right of action); Gabelli Global Multimedia Trust Inc. v. Western Inv. LLC, 700 F. Supp. 2d 748, 758–60 (D. Md. 2010) (dismissing action seeking declaratory and injunctive relief under the Investment Company Act upon concluding that the Act did not create an implied private right of action). Moreover, Rose is not persuasive. It conflicts with the ABA's statutory scheme. Instead, the court finds much more persuasive those cases holding that the ABA's statutory scheme requires a plaintiff to exhaust administrative remedies under the ABA before filing suit. See Gray, 2011 WL 5191294, at *6; Jackson v. Fed. Bureau of Prisons, Civ. No. 06-1347 (MJD/RLE), 2007 WL 843839, at *20 (D. Minn. Mar. 16, 2007) (unpublished); Telep v. Potter, No. Civ.A. 2:04CV6, 2005 WL 2454103, at *9 (E.D. Va. Sept. 30, 2005) (unpublished); Crowder v. True, No. 95 C 4704, 1998 WL 42318, at *2 (N.D. Ill. Jan. 29, 1998) (unpublished). Accordingly, the court dismisses plaintiffs' ABA claim in count one without prejudice for failure to exhaust administrative remedies with the Board.

8

Next, the court addresses plaintiffs' claim in count two under section 504(a) of the

Rehabilitation Act. See Compl. ¶¶ 60–78. Section 504(a) of the Rehabilitation Act provides:

> [n]o otherwise qualified individual with a disability . . . shall, solely by reason of her
> or his disability, be excluded from the participation in, be denied the benefits of, or
> be subjected to discrimination under any program or activity receiving [f]ederal
> financial assistance or under any program or activity conducted by any Executive
> agency or by the United States Postal Service. The head of each such agency shall
> promulgate such regulations as may be necessary to carry out the amendments to this
> section made by the Rehabilitation, Comprehensive Services, and Developmental
> Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to
> appropriate authorizing committees of the Congress, and such regulation may take
> effect no earlier than the thirtieth day after the date on which such regulation is so
> submitted to such committees.

29 U.S.C. § 794(a). The 1978 amendment to the Rehabilitation Act of 1973 added the phrase

"under any program or activity conducted by any Executive agency or by the United States Postal

Service" to section 504(a) and added the requirement that the head of each Executive agency

promulgate regulations "to carry out" the 1978 amendment. See Pub. L. No. 95-602, tit. IV, § 119,

92 Stat. 2955, 2982 (1978). Plaintiffs' claim in count two relies on the 1978 amendment and notes

that the Bureau of Prisons is part of the United States Department of Justice, which is an "Executive

Agency" under the Rehabilitation Act. See Compl. ¶ 64. Plaintiffs also cite a portion of the

Administrative Procedure Act, 5 U.S.C. § 703, in count two.

In accordance with the 1978 amendment to section 504(a), the Department of Justice

published a Notice of Proposed Rulemaking concerning the "enforcement of section 504 of the

Rehabilitation Act of 1973, as amended, which prohibits discrimination on the basis of handicap,

as it applies to programs and activities conducted by the Department of Justice." 28 C.F.R. Pt. 39,

Nt., at 1048 (2012). Thereafter, the Department of Justice published a Supplementary Notice further

explaining the Notice of Proposed Rulemaking. See id. In accordance with section 504(a), and after

receiving and reviewing public comments on the proposed regulations, the Department of Justice submitted the proposed regulations to the appropriate authorizing congressional committees, and the regulations became effective on October 11, 1984. Id. The Department of Justice stated in the supplementary information concerning the regulations that the regulations apply "to all programs and activities conducted by the Department of Justice." Id. Thus, the regulations governed "the activities of over 30 separate subunits in the Department, including, for example, . . . the Bureau of Prisons." Id.; see 28 C.F.R. § 39.102 (2012). The regulations are published at 28 C.F.R. §§ 39.101–.170 (2012).

The regulations apply "to all programs or activities conducted by the agency." 28 C.F.R. § 39.102. The regulations provide in part:

> Each building or part of a building that is constructed or altered by, on behalf of, or for the use of the agency shall be designed, constructed, or altered so as to be readily accessible to and useable by handicapped persons. The definitions, requirements, and standards of the Architectural Barriers Act (42 U.S.C. 4151–4157), as established in 41 CFR 101-19.600 to 10-19.607, apply to buildings covered by this section.

Id. § 39.151. The regulations also have a section entitled, "[c]ompliance procedures." Id. § 39.170. These compliance procedures apply "to all allegations of discrimination on the basis of handicap in programs or activities conducted by the agency," except employment complaints. Id. §§ 39.170(a)–(b).[3] The compliance procedures expressly apply to inmates (such as plaintiffs) within

---

[3] Employment complaints are processed according to the procedures established by the Equal Employment Opportunity Commission in 29 C.F.R. part 1613 pursuant to section 501 of the Rehabilitation Act. See 28 C.F.R. § 39.170(b); see also 29 U.S.C. § 794a(a)(1); Lane v. Pena, 518 U.S. 187, 193 (1996) (noting that section 501 of the Rehabilitation Act prohibits "discrimination on the basis of disability in employment decisions by the Federal Government"); Carr v. Reno, 23 F.3d 525, 528–30 (D.C. Cir. 1994).

federal penal institutions. See id. §§ 39.170(d)(1), (3).[4] When a complaint alleges "that a building or facility that is subject to the Architectural Barriers Act of 1968, as amended (42 U.S.C. 4151–4157) . . . is not readily accessible to and usable by handicapped persons," the Department of Justice must promptly send the complaint to the Board. 28 C.F.R. § 39.170(e).

The regulations describe the administrative process concerning a complaint in great detail. See id. § 39.170(f). The process includes investigation and conciliation. See id. § 39.170(g). If the parties cannot reach an "informal resolution of the complaint," the official (i.e., "the Director of Equal Employment Opportunity for the Department of Justice or his or her designee") must notify the complainant and respondent of the results of the investigation within 180 days of receipt of the complaint. See id. § 39.170(h); see also § 39.103 (defining "Official"). If either party is not satisfied, the party may file an appeal to the Complaint Adjudication Officer, who is appointed by the Assistant Attorney General for the Civil Rights Division. Id. § 39.170(i); see id. § 39.103. If an appeal is filed, the Responsible Official (i.e., "the Director of Equal Employment Opportunity for the Department of Justice or his or her designee") must accept and process the appeal. Id. § 39.170(j); see id. § 39.103. "Upon a timely request for a hearing, the Responsible Official shall appoint an administrative law judge to conduct the hearing." Id. § 39.170(k)(1). The administrative law judge then conducts the hearing as detailed in 28 C.F.R. § 39.170(k). "The hearing, decision, and any administrative review thereof shall be conducted in conformity with 5 U.S.C. 554–557

_____

[4] The term "inmate" is not defined in the regulations published at 28 C.F.R. §§ 39.101–.170. However, in the Department of Justice's regulations concerning the Administrative Remedy Program, the Department of Justice defines "inmate" more broadly than the term "prisoner" is defined in the PLRA. See 28 C.F.R. § 500.1(c) (inmate includes "all persons in the custody of the Bureau of Prisons" including "persons held as witnesses, detainees, or otherwise"). The broader definition of "inmate" comports with its plain meaning. See WEBSTER'S NEW COLLEGIATE DICTIONARY 590 (1979) (defining "inmate" to mean "one of a group occupying a single place of residence; esp: a person confined (as in a prison or hospital)").

(sections 5–8 of the Administrative Procedure Act)." Id. § 39.170(k)(3).

After the hearing, the administrative law judge must "submit in writing recommended findings of fact, conclusions of law, and remedies to all parties and the Complaint Adjudication Officer within 30 days after receipt of the hearing transcripts, or within 30 days after the conclusion of the hearing if no transcript is made." Id. § 39.170(k)(6). The Complaint Adjudication Officer then must make the agency decision. Id. § 39.170(l). Finally, the Complaint Adjudication Officer "may retain responsibility for resolving disagreements that arise between the parties over interpretation of the final agency decision, or for specific adjudicatory decisions arising out of implementation." Id.

In 1984, the Department of Justice explained its rationale for adopting section 39.170 in the supplementary information concerning the Notice of Proposed Rulemaking and Supplementary Notice. See 28 C.F.R. Pt. 39, Nt., at 1059. The Department of Justice stated:

> Section 39.170 establishes a detailed complaint processing and review procedure for resolving allegations of discrimination in violation of section 504 in the Department of Justice's programs and activities. The 1978 amendments to section 504 failed to provide a specific statutory remedy for violations of section 504 in federally conducted programs. The amendment's legislative history suggesting parallelism between section 504 for federally conducted and federally assisted programs is unhelpful in this area because the fund termination mechanism used in section 504 federally assisted regulations depends on the legal relationship between a Federal funding agency and the recipients to which the Federal funding is extended. The Department has decided that the most effective and appropriate manner in which to enforce section 504 in the federally conducted area is through an equitable complaint resolution process. Section 39.170 establishes this process.

Id.

As with the ABA claim, defendants' motion to dismiss also asserts the failure to exhaust administrative remedies as to plaintiffs' section 504(a) claim under the Rehabilitation Act in count two. See Defs.' Mem. Support Mot. Dismiss 5 n.4. Moreover, in connection with count two, the

parties vigorously debate whether plaintiffs can pursue an implied private right of action under

section 504(a) of the Rehabilitation Act or whether any such cause of action must arise under the

Administrative Procedure Act ("APA"). The court, however, assumes without deciding that the

plaintiffs may pursue an implied private right of action under section 504(a) and seek an injunction

against the Bureau of Prisons. Cf. Barnes v. Gorman, 536 U.S. 181, 184–85 (2002) (discussing an

implied private cause of action under section 504(a) of the Rehabilitation Act seeking money

damages against a non-federal entity receiving federal financial assistance within the meaning of

section 504); Lane, 518 U.S. at 189–200 (analyzing a claim pled as an implied private cause of

action under section 504(a) of the Rehabilitation Act against the United States Department of

Transportation); Consol. Rail Corp. v. Darrone, 465 U.S. 624, 636–37 (1984) (analyzing a claim pled

as an implied private cause of action under section 504(a) of the Rehabilitation Act seeking money

damages against a non-federal entity receiving federal financial assistance within the meaning of

section 504). In making this assumption, the court notes that Lane involved a student at a federal

service academy within the United States Department of Transportation who was dismissed from

the academy because of his diabetes. Lane, 518 U.S. at 189. After exhausting his administrative

remedies, Lane sued the Department of Transportation under section 504(a) of the Rehabilitation

Act, contending that the academy was a "program or activity conducted by [an] Executive agency"

under 29 U.S.C. § 794(a), and obtained both injunctive relief (in the form of an order of

reinstatement to the academy) and money damages in the trial court. Id. at 189–90. Both the United

States Court of Appeals for the District of Columbia Circuit and the Supreme Court concluded that

the Rehabilitation Act did not waive the federal government's sovereign immunity as to money

damages for a violation of section 504(a). See id. at 190–200. Thus, even if an implied private right

of action exists against an Executive agency under section 504(a) of the Rehabilitation Act,

13

sovereign immunity bars an award of money damages. Id. However, as the Solicitor General stated in his brief to the Supreme Court in Lane, the D.C. Circuit "did not address . . . the source of petitioner's cause of action in its [decision] in this case." See Brief for Respondents, Lane v. Pena, 518 U.S. 187 (1996) (No. 95-365), 1996 WL 115795, at *27 n.17. Furthermore, the Solicitor General also stated that "resolution of the source of the cause of action, be it [an implied private right of action] under Section 504(a) directly [against the Department of Transportation] or [an action under] the APA, would . . . not alter the outcome of this case. The waiver of federal sovereign immunity in the APA is limited to an action 'seeking relief other than money damages.' 5 U.S.C. § 702." Id. Notably, in Lane, the Court did not expressly resolve the source of Lane's cause of action. Effectively, in Lane, the Court assumed without deciding that Lane could pursue an implied private cause of action under section 504(a) and seek injunctive relief against the Department of Transportation.

Here, in assuming without deciding that plaintiffs may pursue an implied private right of action under section 504(a) against the Bureau of Prisons, this court recognizes that some lower courts have interpreted Lane to mean that a plaintiff may pursue an implied private right of action under section 504(a) against an Executive agency of the United States so long as the plaintiff seeks only injunctive relief. See Howard v. Bureau of Prisons, Civil Action No. 3:05-CV-1372, 2008 WL 318387, at *9 (M.D. Pa. Feb. 4, 2008) (unpublished); Am. Council of Blind v. Paulson, 463 F. Supp. 2d 51, 57–58 (D.D.C. 2006), aff'd, 525 F.3d 1256 (D.C. Cir. 2008); Mendez v. Gearan, 947 F. Supp. 1364, 1366 (N.D. Cal. 1996). This court also recognizes (as did the Solicitor General in Lane) that a strong argument exists for holding that the source of the plaintiffs' cause of action should be the APA. See Clark v. Skinner, 937 F.2d 123, 125–26 (4th Cir. 1991); Cousins v. Sec'y of the Dep't of Transp., 880 F.2d 603, 605 (1st Cir. 1989) (en banc) (Breyer, J.). Nonetheless, whether plaintiffs'

claim to injunctive relief under section 504(a) of the Rehabilitation Act is enforceable through an implied private right of action under section 504(a) or enforceable under the APA, the first question that arises is whether plaintiffs must exhaust the administrative remedies that the Department of Justice created in 28 C.F.R. § 39.170 pursuant to the statutory command in the 1978 amendment to the Rehabilitation Act. It is to this first question that the court now turns.

In analyzing whether plaintiffs first must exhaust the administrative remedies in 28 C.F.R. § 39.170, this court recognizes that the regulations implementing the Rehabilitation Act provide "an important source of guidance on the meaning of [section] 504." Alexander v. Choate, 469 U.S. 287, 304 n.24 (1985). Moreover, when the Department of Justice issued the regulations contained in 28 C.F.R. §§ 39.101–.170, it was the Executive branch agency that the President made responsible for coordinating agency implementation of section 504. See Darrone, 465 U.S. at 634 n.14 (citing Exec. Order No. 12250, 45 Fed. Reg. 72,995 (Nov. 2, 1980)). As such, it has particular expertise with respect to the Rehabilitation Act.

As discussed, section 504(a) required the newly covered Executive agencies to promulgate regulations "to carry out" the 1978 amendment to the Rehabilitation Act, which added the phrase "any program or activity conducted by any Executive agency or by the United States Postal Service" to section 504(a). 29 U.S.C. § 794(a). In 1984, the Department of Justice promulgated such regulations as reflected in 28 C.F.R. §§ 39.101–.170. Furthermore, other district courts have concluded that an inmate at a federal correctional institution must exhaust the administrative remedies in 28 C.F.R. § 39.170 before bringing suit under section 504(a) of the Rehabilitation Act. See Brown v. Cantrell, Civil Action No. 11-cv-200-PAB-NEH, 2012 WL 4050300, at *2–4 (D. Colo. Sept. 14, 2012) (unpublished); Haley v. Haynes, Civil Action No. CV210-122, 2012 WL 112946, at *1 (S.D. Ga. Jan. 12, 2012) (unpublished); Scott v. Goord, No. 01Civ.0847(LTS)(AJP),

2004 WL 2403853, at *7–8 (S.D.N.Y. Oct. 27, 2004) (unpublished); Burgess v. Goord, No. 98 Civ.2077(SAS), 1999 WL 33458, at *7 n.6 (S.D.N.Y. Jan. 26, 1999) (unpublished); Crowder v. True, No. 91 C 7427, 1993 WL 532455, at *5–6 (N.D. Ill. Dec. 21, 1993) (unpublished); contra Franco-Gonzales v. Holder, 767 F. Supp. 2d 1034, 1046 n.5 (C.D. Cal. 2010). However, in all but two of these cases (Crowder and Franco-Gonzales), the district court also concluded that the PLRA required exhaustion. Moreover, none of the cases thoroughly examined whether an inmate who is not subject to the PLRA should be required to exhaust administrative remedies under 28 C.F.R. § 39.170.

In deciding whether to require plaintiffs to exhaust administrative remedies under 28 C.F.R. § 39.170, the court acknowledges certain governing principles. First, if Congress has mandated exhaustion of administrative remedies, then exhaustion is required. See Coit Independence Joint Venture v. Fed. Sav. & Loan Ins. Corp., 489 U.S. 561, 579 (1989). Here, although Congress mandated that all Executive agencies "carry out" the 1978 amendment making section 504 applicable to "any program or activity conducted by [the] the Executive agency," 29 U.S.C. § 794(a), Congress itself did not mandate exhaustion of the administrative remedies (if any) contained in the ensuing regulations. Thus, sound judicial discretion governs in deciding whether to require plaintiffs to exhaust administrative remedies under 28 C.F.R. § 39.170. See Patsy v. Bd. of Regents of Fla., 457 U.S. 496, 501, 502 n.4 (1982); Cavalier Tel. LLC v. Va. Elec. & Power Co., 303 F.3d 316, 322–25 (4th Cir. 2002).

Generally, a party should exhaust federal administrative remedies before seeking relief in federal court. See Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51 & nn.9–10 (1938) (describing history of doctrine of exhaustion of administrative remedies); Cavalier Tel., 303 F.3d at 322. Exhaustion is particularly appropriate where a federal agency can apply its special expertise.

See McKart v. United States, 395 U.S. 185, 194 (1969). Requiring exhaustion promotes efficiency in that an agency can correct mistakes that it has made in connection with a program that it administers before being haled into federal court. See Jones, 549 U.S. at 219; Woodford, 548 U.S. at 88–89; Parisi v. Davidson, 405 U.S. 34, 37 (1972); McKart, 395 U.S. at 195. In addition, a claim usually can be resolved more quickly and less expensively in an administrative forum as opposed to litigation in federal court. Furthermore, if the claim is resolved to a claimant's satisfaction at the administrative level, the administrative process moots the need to litigate in federal court. See Jones, 549 U.S. at 219; Woodford, 548 U.S. at 89; Parisi, 405 U.S. at 37; McKart, 395 U.S. at 195; Cavalier Tel., 303 F.3d at 322. Even if the claimant is not satisfied with the outcome in the administrative process, the administrative process usually will produce an administrative record that will help to clarify any ensuing litigation in federal court. See Jones, 549 U.S. at 219; Weinberger v. Salfi, 422 U.S. 749, 765 (1975); Cavalier Tel., 303 F.3d at 322.

The Supreme Court has focused on three issues in analyzing the exercise of judicial discretion concerning the exhaustion of administrative remedies. First, a court should examine whether resort to the administrative process will result in indefinite or unreasonable delay versus a prompt administrative decision. See Coit Independence Joint Venture, 489 U.S. at 587; Gibson v. Berryhill, 411 U.S. 564, 575 n.14 (1973); Walker v. Southern Ry., 385 U.S. 196, 198 (1966) (per curiam). Second, a court should examine whether the agency is empowered to grant effective relief. See Gibson, 411 U.S. at 575 n.14; cf. McCarthy v. Madigan, 503 U.S. 140, 153–54 (1992) (declining to require exhaustion, in part, because agency lacked the power to grant monetary relief in the administrative process), superseded by the PLRA as stated in Woodford, 548 U.S. at 84–85 (discussing the PLRA); Leedom v. Kyne, 358 U.S. 184, 190–91 (1958) (no need to exhaust administrative remedies where the NLRB acted beyond its jurisdiction); Mont. Nat'l Bank of

Billings v. Yellowstone Cnty., 276 U.S. 499, 505 (1928) (no need to exhaust administrative remedies where agency process would be futile due to the agency's inability to provide appropriate relief). Third, a court should examine the adequacy of the administrative process, including whether the agency has expertise and whether the decisionmaking process is biased. See McCarthy, 503 U.S. at 147–49; Gibson, 411 U.S. at 575 n.14; McKart, 395 U.S. at 194.

Having considered these three issues, the court will exercise its discretion and require plaintiffs to exhaust the administrative remedies in 28 C.F.R. § 39.170. First, the process described in 28 C.F.R. § 39.170 includes prompt deadlines that the Department of Justice must meet in resolving an inmate's claim under section 504(a) of the Rehabilitation Act. See 28 C.F.R. § 39.170(d)–(l).

Second, the Department of Justice is empowered to grant the requested relief. As mentioned, regardless whether plaintiffs' claim in count two is properly brought in court as an implied private cause of action under section 504(a) of the Rehabilitation Act or under the APA, the requested remedy in federal court is the same: an injunction mandating that the Bureau of Prisons make changes in facilities and programs to accommodate plaintiffs' alleged disabilities. However, the Department of Justice, through the administrative process, has the power to make whatever changes (if any) are needed in order to ensure that the Bureau of Prisons complies with the Rehabilitation Act. Moreover, that the plaintiffs seek only injunctive relief strongly supports requiring exhaustion of administrative remedies. "An appeal to the equity jurisdiction conferred in federal district courts is an appeal to the sound discretion which guides determinations of courts of equity." Meredith v. City of Winter Haven, 320 U.S. 228, 235 (1943). Any litigant "making such an appeal must show that the intervention of equity is required." Farmer v. Brennan, 511 U.S. 825, 847 (1994). "When a prison inmate seeks injunctive relief, a court need not ignore the inmate's failure to take advantage

18

Case 5:12-ct-03020-D   Document 39   Filed 02/27/13   Page 18 of 27

of [available administrative] procedures, and an inmate who needlessly bypasses such procedures may properly be compelled to pursue them." Id.; see McCarthy, 503 U.S. at 153 n.5; cf. Myers, 303 U.S. at 51 n.9 (observing that exhaustion of administrative remedies "has been most frequently applied . . . where relief by injunction was sought").

Third, the administrative process is more than adequate. Under 28 C.F.R. § 39.170, the Department of Justice has established a detailed procedure involving the Director of Equal Employment Opportunity for the Department of Justice or his or her designee, id. § 39.103, the Assistant Attorney General for the Civil Rights Division, id., a Complaint Adjudication Officer appointed by the Assistant Attorney General for the Civil Rights Division, id., and an administrative law judge, id. § 39.170(k). Moreover, where, as here, a complaint alleges a violation of the Architectural Barriers Act of 1968, as amended, the Department of Justice also must send the complaint to the Board. See 28 C.F.R. § 39.170(e). Nothing suggests bias or incompetence on the part of these officials to evaluate plaintiffs' claim under section 504(a) of the Rehabilitation Act. Indeed, everything suggests just the opposite. Accordingly, all three factors warrant this court's conclusion that plaintiffs must exhaust the administrative remedies in 28 C.F.R. § 39.170 before pursuing count two in this court.

Finally, there is nothing inconsistent about rejecting defendants' exhaustion argument under the PLRA, but requiring exhaustion under 28 C.F.R. § 39.170. Congress enacted the PLRA in 1996 and included a definition of "prisoner," which the Fourth Circuit has construed not to include individuals subject to civil commitment. See 42 U.S.C. § 1997e(h); Hicks, 255 F. App'x at 748; Michau, 434 F.3d at 727–28. If plaintiffs were "prisoners" as defined in the PLRA on the date that they filed suit, the PLRA would have required them to exhaust their administrative remedies under 28 C.F.R. §§ 542.10–.19 (2012) and under 28 C.F.R. § 39.170. See 28 C.F.R. § 39.170(d)(1)(ii);

Brown, 2012 WL 4050300, at *2–4; Haley, 2012 WL 112946, at *1. Even though plaintiffs were not "prisoners" under the PLRA on the date that they filed suit (and are not today), plaintiffs' Rehabilitation Act claim under section 504(a) falls within the regulations that Congress required the Department of Justice to promulgate to "carry out" section 504(a). As such and as already explained, sound judicial discretion warrants requiring plaintiffs to exhaust their administrative remedies. See Crowder, 1993 WL 532455, at *5–6. Because plaintiffs concede that they have not exhausted their administrative remedies under 28 C.F.R. § 39.170, the court dismisses plaintiffs' Rehabilitation Act claim under section 504(a) in count two without prejudice for failure to exhaust administrative remedies.

Likewise, requiring plaintiffs to exhaust their administrative remedies in 28 C.F.R. § 39.170 does not conflict with cases holding that no exhaustion of administrative remedies is required when a private plaintiff seeks damages or injunctive relief under section 504(a) of the Rehabilitation Act against a non-federal defendant conducting "a program or activity receiving [f]ederal financial assistance" within the meaning of section 504(a). 29 U.S.C. § 794(a); see, e.g., Freed v. Consol. Rail Corp., 201 F.3d 188, 191–93 (3d Cir. 2000) (collecting cases); Tucks v. HCA Health Srvs. of Tenn., Inc., 7 F.3d 465, 470–71 (6th Cir. 1993) (collecting cases); Lucas v. Henrico Cnty. Sch. Bd., 822 F. Supp. 2d 589, 603 (E.D. Va. 2011) (collecting cases); Thompson v. Va. Dep't of Games & Inland Fisheries, No. 1:05CV00109, 2006 WL 1310363, at *4 (W.D. Va. May 14, 2006) (collecting cases), aff'd, 196 F. App'x 164 (4th Cir. 2006) (per curiam) (unpublished); accord Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 255 (2009) (noting that there is no requirement to exhaust administrative remedies before filing an implied private cause of action under Title IX concerning "any education program or activity receiving Federal financial assistance"). By definition and unlike in the cited cases, the Department of Justice regulations at 28 C.F.R. § 39.170 apply only to the programs or

20

activities conducted by the Department of Justice. 28 C.F.R. § 39.102. Thus, by definition and unlike in the cited cases, the Department of Justice regulations do not apply to such private plaintiffs who are seeking relief from non-federal defendants who obtain "federal financial assistance" within the meaning of section 504(a). Moreover, requiring the plaintiffs in this case to exhaust their administrative remedies comports with the wall of precedent that requires federal and Postal Service employees seeking relief under section 501 or section 504(a) of the Rehabilitation Act to exhaust available federal administrative remedies before filing suit in federal court. See Kratville v. Runyon, 90 F.3d 195, 198–99 (7th Cir. 1996); Clarke v. Runyon, No. 95-2347, 1995 WL 619943, at *1 (4th Cir. Oct. 23, 1995) (per curiam) (unpublished); Spence v. Straw, 54 F.3d 196, 198–202 (3d Cir. 1995); Vinieratos v. United States, 939 F.2d 762, 773 (9th Cir. 1991); Doe v. Garrett, 903 F.2d 1455, 1459–62 (11th Cir. 1990); Morgan v. U.S. Postal Serv., 798 F.2d 1162, 1164–65 (8th Cir. 1986) (per curiam); Smith v. U.S. Postal Serv., 742 F.2d 257, 258–62 (6th Cir. 1984); Prewitt v. U.S. Postal Serv., 662 F.2d 292, 301–04 (5th Cir. Unit A Nov. 1981).

3.

Next, the court addresses plaintiffs' constitutional claims. Plaintiffs assert that "[d]efendants have impermissibly deprived . . . Plaintiffs of their First Amendment rights of free exercise of religion by discriminating against Plaintiffs because of their disability and by substantially burdening [their] religious exercise." Compl. ¶ 93. According to plaintiffs, they (unlike detainees without disabilities) cannot access the religious library or outdoor pagan worship area at Butner. Id. ¶ 95. Plaintiffs also assert a violation of the Fifth Amendment. See id. ¶¶ 79–84. Plaintiffs contend that "[t]he Fifth Amendment guarantees [them] a constitutional right to privacy in medical treatment." Id. ¶ 81. According to plaintiffs, "[t]he medical facility at FCI Butner contains no accessible examination room. Defendants' failure to provide an examination room able to accommodate

21

Plaintiffs violates Plaintiffs' constitutional right to privacy in medical treatment." Id. ¶ 82. Plaintiffs then allege that:

> Because the examination rooms cannot accommodate wheelchairs, Plaintiffs have been forced to submit to physical examinations with their assigned physician's assistants and doctors in the hallway of the infirmary, a public area that provides no privacy. This breach of Plaintiffs' privacy rights is especially problematic in the institution setting where an inmate or detainee's possession of confidential information about another inmate or detainee can be used in threatening and dangerous ways.

Id. ¶ 83. According to plaintiffs, "Defendants' failure to comply with the Fifth Amendment has resulted in harm to Plaintiffs and will continue to do so, as Plaintiffs will remain in the custody of the BOP and will continue to be subjected to these conditions unless and until Defendants are ordered by this [c]ourt to modify their policies, practices, and procedures pursuant to the Fifth Amendment." Id. ¶ 84.

The parties' arguments concerning defendants' motion to dismiss the constitutional claims focus on the balancing test set forth in Turner v. Safley, 482 U.S. 78, 89–91 (1987). The court agrees that Turner applies to inmates detained under a civil commitment statute. See Wolfe v. Christie, Civil Action No. 10-2083 (PGS), 2010 WL 2925145, at *6–7 (D.N.J. July 19, 2010) (unpublished); Solkolsky v. Voss, No. 1:07-cv-00613-OWW-SMS-PC, 2008 WL 927722, at *5–6 (E.D. Cal. Apr. 4, 2008) (unpublished).

Plaintiffs have stated a claim under the Free Exercise Clause of the First Amendment. See, e.g., Turner, 482 U.S. at 89–91; O'Lone v. Estate of Shabazz, 482 U.S. 342, 348–50 (1987); Creveling v. Johnson, Civil Action No. 11-667(SDW), 2011 WL 3444092, at *6–7 (D.N.J. Aug. 4, 2011) (unpublished); Francis v. Watson, C/A No. 3:05-2499-JFA-JRM, 2006 WL 2716452, at *3 (D.S.C. Sept. 22, 2006). Whether plaintiffs can prove their Free Exercise claim is an issue for

22

another day. Thus, the court denies defendants' motion to dismiss plaintiffs' First Amendment claim.

As for plaintiffs' Fifth Amendment claim that they have been denied a constitutional right to privacy in medical treatment, the Supreme Court has never held that an inmate has a constitutional right to privacy in medical treatment. See Rollins v. Miller, No. 1:12-cv-298-RJC, 2012 WL 4974966, at *2 (W.D.N.C. Oct. 17, 2012) (unpublished); Sherman v. Jones, 258 F. Supp. 2d 440, 442–43 (E.D. Va. 2003); Adams v. Drew, 906 F. Supp. 1050, 1054–58 (E.D. Va. 1995). Rather, the Supreme Court has recognized that "imprisonment carries with it the circumscription or loss of many significant rights." Hudson v. Palmer, 468 U.S. 517, 524 (1984). Even for detainees, loss of privacy is an "inherent incident[] of confinement." Bell v. Wolfish, 441 U.S. 520, 537 (1979). Moreover, even though plaintiffs have alleged a Fifth Amendment violation, the "deliberate indifference" standard applies to this claim. See, e.g., Farmer, 511 U.S. at 837–38; Brown v. Harris, 240 F.3d 383, 388–89 (4th Cir. 2001). Furthermore, like the Supreme Court, the Fourth Circuit has never held that an inmate has a constitutional right to privacy in medical treatment. See Rollins, 2012 WL 4974966, at *2; Sherman, 258 F. Supp. 2d at 443–44; Adams, 906 F. Supp. 1056–57; cf. Watson v. Lowcountry Red Cross, 974 F.2d 482, 487–88 & n.9 (4th Cir. 1992) (discussing privacy interest of constitutional significance of blood donors, but finding no violation of any such interest); Taylor v. Best, 746 F.2d 220, 225 (4th Cir.1984) (discussing privacy interest of constitutional significance of inmate in inmate's family history, but finding that the privacy interest is outweighed by compelling public interest in ensuring security of prison and effective rehabilitation).

The court assumes without deciding that plaintiffs possess a limited constitutional right to privacy in medical treatment. See Pearson v. Callahan, 555 U.S. 223, 241 (2009) (federal court should not pass on questions of constitutionality unless such adjudication is unavoidable); accord NASA v. Nelson, 131 S. Ct. 746, 756–57 (2011) (assuming without deciding that inquiries in a

23

government agency's official background investigation "implicate a privacy interest of constitutional significance"). In doing so, the court acknowledges that some federal circuit courts have recognized that an inmate has a limited constitutional right to medical privacy. See Moore v. Prevo, 379 F. App'x 425, 428 (6th Cir. 2010) (unpublished) (holding that an inmate has a "privacy interest in guarding against disclosure of sensitive medical information from other inmates subject to legitimate penological interests"); Doe v. Delie, 257 F.3d 309, 316–17, 323 (3d Cir. 2001) (recognizing that deliberately indifferent disclosure of HIV-positive inmate's medical status could violate inmate's constitutional right to medical privacy when made to "corrections officer escorts" and by "loud announcement"); Powell v. Schriver, 175 F.3d 107, 109, 112 (2d Cir. 1999) (recognizing that "gratuitous disclosure" of inmate's status as a transsexual "as humor or gossip" and "in the presence of other inmates and staff members" violates inmates's constitutional right to medical privacy).

Here, plaintiffs have failed to plausibly allege that defendants were deliberately indifferent to their alleged constitutional right to medical privacy. See Franklin v. McCaughtry, 110 F. App'x 715, 719 (7th Cir. 2004) (per curiam) (unpublished) ("[S]ome amount of sharing of medical information in areas where it might be overheard by other patients . . . is commonplace . . . . Franklin appears to complain of nothing more than this sort of general indiscretion, including the argument that treatment in front of staff members is offensive. . . . Because the semi-public discussion of these ailments would not transgress the constitutional right to information privacy insofar as that right might extend to prisoners, we affirm the district court's dismissal and reserve for another day a fuller treatment of this question."); Patin v. LeBlanc, Civil Action No. 11-3071, 2012 WL 3109402, at *21 (E.D. La. May 18, 2012) (unpublished) ("There is no clearly defined law which would require the counselor[]s at [the prison] to speak with Patin in a particular setting or in

24

extreme privacy."), report and recommendation adopted, 2012 WL 3109398 (E.D. La. July 31, 2012) (unpublished); Sherman, 258 F. Supp. 2d at 443–45; Adams, 906 F. Supp. at 1053–58. Moreover, although plaintiffs allege that their medical examinations are conducted in "a public area that provides no privacy" which could result in the use of their medical information by another inmate or detainee "in threatening and dangerous ways," Compl. ¶ 83, plaintiffs have not plausibly alleged that any such harm has come to them, or that any Butner staff member has, with deliberate indifference, disclosed their medical information. See Patin, 2012 WL 3109402, at *21; cf. Iqbal, 556 U.S. at 678–79; Twombly, 550 U.S. at 570. Thus, plaintiffs have failed to state a Fifth Amendment claim, and the claim is dismissed without prejudice. See, e.g., Smith v. Hayman, 489 F. App'x 544, 548–49 (3d Cir.) (per curiam) (unpublished), cert. denied, 133 S. Ct. 762 (2012); Rollins, 2012 WL 4974966, at *2; Patin, 2012 WL 3109402, at *21; Sherman, 258 F. Supp. 2d at 443–45; Adams, 906 F. Supp. at 1053–58.

4.

Finally, the court addresses plaintiffs' claim under the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb et seq. ("RFRA"). See Compl. ¶¶ 85–91. RFRA prohibits the federal government from "substantially burden[ing] a person's exercise of religion," even as a result of a law of general applicability, unless the federal government can demonstrate that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a)–(b); Lebron v. Rumsfeld, 670 F.3d 540, 556–57 (4th Cir. 2012); Madison v. Riter, 355 F.3d 310, 315 (4th Cir. 2003); O'Bryan v. Bureau of Prisons, 349 F.3d 399, 401–02 (7th Cir. 2003); Kikumura v. Hurley,

25

242 F.3d 950, 961–62 (10th Cir. 2001).[5]  Here, plaintiffs have stated a claim.  See, e.g., Couch v. Jabe, 679 F.3d 197, 200–04 (4th Cir. 2012); Smith v. Ozmint, 578 F.3d 246, 250–54 (4th Cir. 2009); O'Bryan, 349 F.3d at 401–02; Saunders v. Wilner, Civil No. 09-cv-00114-REB-KMT, 2010 WL 582373, at *10–11 (D. Colo. Feb. 18, 2010) (unpublished); Sample v. Lappin, 424 F. Supp. 2d 187, 192–96 (D.D.C. 2006).[6]  Accordingly, the court denies defendants' motion to dismiss the RFRA claim.

C.

Plaintiffs have demonstrated a good-faith need to develop a factual record in order to oppose defendants' summary judgment motion as to the Free Exercise claim and the RFRA claim.  See Fed. R. Civ. P. 56(d).  Because the parties have not engaged in any discovery in this action and plaintiffs' counsel has filed an appropriate Rule 56(d) affidavit, the court grants plaintiffs' Rule 56(d) motion and denies without prejudice defendants' motion for summary judgment.

III.

In sum, defendants' motion to dismiss or for summary judgment [D.E. 25] is GRANTED IN PART and DENIED IN PART.  Count one under the Architectural Barriers Act and count two under the Rehabilitation Act are DISMISSED without prejudice for failure to exhaust administrative remedies.  Count three under the Fifth Amendment is DISMISSED without prejudice for failure to

---

[5] The Supreme Court invalidated RFRA as applied to states and localities.  See City of Boerne v. Flores, 521 U.S. 507 (1997); Madison, 355 F.3d at 315.  Although "Courts of Appeals have held [that RFRA] remains operative as to the Federal Government and federal territories and possessions[,]" the Supreme "Court . . . has not had occasion to rule on the matter."  Cutter v. Wilkinson, 544 U.S. 709, 715 n.2 (2005).  Defendants do not contend that RFRA does not apply to the Bureau of Prisons.

[6] The Fourth Circuit has noted that cases interpreting the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq., such as Couch and Smith, may be instructive for RFRA claims.  See Lebron, 670 F.3d at 557.

state a claim. Plaintiffs' Rule 56(d) motion [D.E. 30] is GRANTED IN PART as to the two remaining claims (the Free Exercise claim and the RFRA claim), and defendants' motion for summary judgment is DENIED without prejudice as to the two remaining claims. The parties shall confer and file a proposed scheduling order (or separate proposed orders, if the parties cannot agree) no later than March 25, 2013. Finally, the court GRANTS Elaine Gardner's motion to withdraw [D.E. 38].

SO ORDERED. This **27** day of February 2013.

JAMES C. DEVER III
Chief United States District Judge